Thank you, Your Honor. Good morning. May it please the Court. Sarah Peterson on behalf of Battle Born Investments Company, LLC, First 100, LLC, and First 100 Holdings, LLC. With me at council table are Rhys Morgan and Bina Patel. I'd like to reserve five minutes for rebuttal, please. Keep an eye on the clock. I will, Your Honor. I plan to address the pleading issues before turning to summary judgment. The district court struck claimant's claims on the ground that claimants had failed to adequately allege those claims, but a straightforward application of this court's precedents requires reversal of that decision. Where, as in this case, claimants allege an ownership interest in the defendant property in a civil forfeiture proceeding, all that is required under Article III is that the assertion of ownership. If the claimant does so, the claim survives a pleading challenge. Probably the best illustration of that principle is this court's per curiam decision in United States versus $999,830 in U.S. currency. In that case, the claimant asserted a legal right and ownership interest in the monies seized from him. And the court's holding was that that single sentence, that single allegation, was sufficient for pleading purposes and reversed the district court's contrary determination. Here, the Battle Born claimants pled that they owned the Bitcoin, which is the defendant property here, and although they weren't required to, they also pled how they came to own the The district court improperly required more of claimants, required claimants to plead additional facts regarding how the bankruptcy debtor, the owner prior to claimants, how Mr. Nang came to own it, and how Mr. Nang's ownership was lawful. Can I ask you a question? If you look at your verified claim, it states on ER-160 that you require additional information that's currently not publicly available to determine if the judgment debtor is, in fact, individual X. That's paragraph 8, paragraph 10, and so far as claimants can show their material judgment creditors of individual X or person associated with individual X. So can you elaborate on why that is a verified claim of ownership that's sufficient? So that's the claim. I believe the court is looking at the claim of first 100 and first 100 holdings. There's a separate claim for Battle Born Investments Company, which we had urged the court to focus on. But you can see that at least as far as this entity, that this is not a sufficient verified statement of ownership. We do think that the claim is still adequately alleged. There's an allegation for first 100 and first 100 holdings that those are the rightful, they are the rightful owners of the defendant property, again, under the standard that all that is required is an unequivocal allegation of ownership. The claim survives that standard. But we take the government's point that the judgment creditor theory is potentially problematic for first 100 and first 100 holdings LLC, so we wouldn't press the point as to those two claimants. But for Battle Born Investments Company, the theory is not premised on being a judgment creditor at all. It's instead premised on that entity having purchased all assets of Mr. Nang's bankruptcy estate. And we don't think there's any equivocation at all with respect to the allegation of ownership for Battle Born Investments Company LLC. But Battle Born has similar language in its verified, or excuse me, its verified claim also has similar language. But claimant requires additional information that is currently not publicly available to determine if the bankruptcy court petitioner is in fact Individual X himself. Right. Or an associated party in the instant matter. So it also has that contingency, right? I wouldn't call it a contingency, Your Honor. I think that's an allegation that we made that the bankruptcy debtor, who again is the owner prior to claimants, that he was either Individual X or an affiliate of Individual X, who's the individual that the government contends stole the Bitcoin. But the allegation is that either way, whether Mr. Nang is Individual X or an affiliate of Individual X, claimants have come to own the Bitcoin. And that allegation is unequivocal. It's at paragraph nine of Battle Born's claim at ER 165. And it's an allegation that the defendant property has been since May 14, 2018 and is still currently owned by claimant Battle Born. So suppose we agree with you that your pleading contains a sufficient assertion of ownership. But we think that what the district court did was essentially convert this to a summary judgment motion. So I understand you have arguments that, you know, given the evidentiary record, summary judgment was not appropriate. But setting that just to the side for a moment, was there anything procedurally improper about just treating this as a summary judgment standard and looking to see whether you had put in enough evidence? I don't think so, Your Honor. I don't think there's any procedural problem with that. I don't think there's, for instance, a notice issue or a due process issue. The record is developed on that point because we did respond both as though the motion were a pleading motion and as though it were potentially a summary judgment motion. But we do think the motion, if viewed as a summary judgment motion, is fatally flawed in a number of ways as well. So no matter how the court analyzes the issue, we submit that reversal is required. And I can go into the reasons for that. Yeah, I mean, maybe starting with, I mean, what really, I mean, you have Mr. Nguyen's assets. What really is the evidence that he owned this? So the evidence is, certainly meets the sum evidence standard, which is the standard that applies here under this Court's cases. And the evidence is Mr. Nguyen's representation to a potential buyer that Mr. Nguyen would sell that buyer the bitcoin in 1HQ3 specifically. That representation, which is the WhatsApp message that he sent to the potential buyer, that evidence in combination with the contemporaneous records that Mr. Nguyen was preparing to sell large quantities of bitcoin around that time includes a draft purchase agreement that was sent to that specific buyer that Mr. Nguyen made the representation to about 1HQ3, a draft escrow agreement that identifies a Canadian law firm, Dunton Rainville, as an escrow agent who would be involved in this. That offer doesn't include the bitcoin wallet at issue, right? The draft escrow agreement does not name 1HQ3 as the wallet. But the only piece of evidence that specifically identifies 1HQ3 is the WhatsApp message that was sent. It's just a picture of the wallet. Is that correct? That's right. A picture of the publicly available part of it.  That everybody could take, right? That's correct, Your Honor. We've never submitted that this was some kind of private website. That's not what we're arguing to the court. We're arguing to the court that Mr. Nguyen made a representation that he owned and had access to the bitcoin in 1HQ3 under circumstances that it wouldn't have benefited him at all if he had made this representation but couldn't have actually transferred the... But there's no evidence that that sale actually went through. That's correct. Is there? And it seems that the money in that wallet, the amount stayed the same. That's correct, Your Honor. There's no evidence that this sale was consummated. But again, the government has argued this must have been a scam by Mr. Nguyen. But it has no evidence at all that this was a scam. It describes other scams where the MO has nothing to do with what the evidence shows here. And the only evidence is that this wasn't a scam because Mr. Nguyen would not have seen any profit from this proposed transaction unless he actually was able to transfer the bitcoin out of 1HQ3. But he didn't transfer it. So to analyze what would have happened had he transferred it doesn't make much sense because he didn't transfer it. So is it fair to say that your entire evidence of ownership is that representation of the publicly available wallet? No, Your Honor. It's that representation in combination with the other records showing that Mr. Nguyen was preparing to sell large quantities of bitcoin. And those records corroborate and substantiate the representation because, again, Mr. Nguyen, unless he actually had the bitcoin, due to the involvement of the escrow agent here, there's no way that he would have seen any benefit from making that representation unless he could actually transfer the bitcoin out of 1HQ3. In addition to that evidence, our verified pleading is evidence, our verified allegations. Does your claim of ownership depend on Mr. Nguyen being Individual X or somehow being affiliated with Individual X because that's what's in your verified claim? That's what it states. It doesn't, Your Honor. It doesn't depend on that. That fact is not essential to our claim. Why was it included in your claim? It was included because the government had given us the information that Individual X had been able to transfer the bitcoin to them out of 1HQ3. So based on the government's information, and in combination with the evidence we had from Mr. Nguyen's devices that he had ownership of 1HQ3, we pled that there must be an affiliation between Mr. Nguyen and the government's Individual X. But it's not essential. The foundation of our claim is this evidence that we have that Mr. Nguyen But it is essential that he owned it, right? He might not have been Individual X, but you need to show that he actually did own this. And your evidence for that is unsworn statements that he made to third parties offering to sell it, right? That's right, yes. Under circumstances that suggest that he would have actually had access and been able to transfer the bitcoin. Yes, Your Honor. You wanted to reserve your time? Thank you, Your Honor. You may. Ms. Chan. May it please the Court, my name is Mary Jean Chan, and I represent the United States in Sapil. This Court may affirm the District Court on multiple bases. First, in their untimely claims, Battleborn failed to make an unequivocal assertion of ownership to provide a colorable basis for standing, instead presenting hedged statements about how Nan, who was not specified initially, might be Individual X or might be associated with Individual X. Second, unsurprisingly, Battleborn was unable to produce evidence that viewed in the light most favorable to Battleborn would lead a reasonable fact finder to conclude that they had an ownership interest in the bitcoin that was seized from 1HQ3. Can I ask you, it seems unfair for the government to file these motions to strike and not identify whether it's a motion for judgment on the pleadings or summary judgment because you're not giving notice and an opportunity for the claimant to then respond appropriately, either based on the four corners of their claim, if it's a judgment on the pleadings, or to get an opportunity to either obtain or provide discovery before the District Court rules. Do you want to address? It just seems unfair, doesn't it? What do you think? I think that the practice should have been clearer and could have been clearer, but in this case it wasn't prejudicial because, as Ms. Peterson said, Battleborn understood that it could be either standard and responded in either standard and presented all the evidence that they would have under summary judgment, as well as looking within the four corners of the claims. So in this case, there was no prejudice, but I agree, Your Honor, that certainly my practice would be to be a little bit clearer. So is your office going to change that practice to be clearer in these types of situations? That is my hope, Your Honor. Well, you may have something to do with that, I would assume. I have conveyed those messages and I will continue to, Your Honor, but of course I can only do so much. But in any case, the District Court understood what the standards were, was able to evaluate all the evidence. As this Court has pointed out, the claims themselves were very noncommittal. They thought that maybe McGann was Individual X or might be associated with Individual X but weren't sure. So that doesn't qualify as an unequivocal assertion of ownership. But there were also statements. I mean, Ms. Peterson read what seems like the key passage at 165, that the defendant property has been and is still currently owned by a claimant, Battleborn. I mean, I don't know how you could have more of an unequivocal assertion of ownership than that. Well, I think it has to be looked in the context of the entire claim. And if there are other statements that essentially undermine a particular statement of unequivocal ownership, then it becomes equivocal again. And here, even though you say, for example, we own this, but then you go on and say, and here's our theory, and our theory is that maybe McGann might be Individual X. We aren't sure, but maybe. That's not unequivocal. And especially here, the case law that this Court has developed on unequivocal assertions of ownership are almost, I think they're entirely in the context where the property that's thought to be forfeited was seized from the possession of the claimant. Here you have no connection at all. And so all you have is these statements that are equivocal. And then I think it's very telling that as the government and Battleborn met and conferred, they backed away from the idea that McGann was Individual X or was associated with Individual X. And they kind of, you know, threw that theory by the wayside and said, you know, we have evidence that he owns it himself. But why wouldn't Mr. McGann, if he went through the process of, you know, setting up that document to make that offer and sending the photo, why would he do all that if he didn't own the money in that account, in that wallet? There are many reasons, and I think we can speculate about those reasons. We know that he was, if not a fraudster, certainly somebody who was extremely unreliable in his statements. In fact, Battleborn and First 100 claim to be victims of his falsehoods. He might have been doing that for all sorts of reasons to make it seem like he had a lot of money. Maybe it was to support some other scheme that he had or to buy time. There are many reasons. But your position is very speculative, and on a motion for summary judgment, all inferences should be drawn in favor of the nonmoving party. Well, that's right. But I think the only evidence that they have that McGann, so the only evidence that they have that they own the property that was taken from 1HQ3 is that McGann made representations. But those representations are equivocal, at the very least. They're not unequivocal, and they were not sworn. And so that's sort of a layer beyond what they would have to prove themselves. So, in other words, if Battleborn had been able to make equivocal statements and have evidence that they owned it, that would be one thing. But they can't. They're relying on McGann. McGann simply showed in a screenshot of a public document in response to a question, which is, where are you going to source these Bitcoin you're purporting to be able to sell? That was not an assertion that I own 1HQ3. It could have been a joke, for example. It could have been just, you know, for example, if somebody said, you know, I want to sell you some steel, where are you going to get that steel? And you show them a picture of the Golden Gate Bridge, that might be an indication that you're going to get it from that or might be a joke. It's not clear. It's certainly not an unequivocal statement, and it's not sworn. So if they had a declaration from Mr. McGann that said, you know, I owned this, would that be enough? I think that might be, Your Honor, under a summary judgment standard. You would have to be able to then sort of make the links, which is that McGann says that he owns 1HQ3 and it's sworn. There would probably need to be some factual basis underneath that because a purely bald assertion is generally not enough. And then you would have to link that all the way back to sort of the ownership, which in this case we're not contesting. We're not contesting that Battleborn is a judgment creditor to McGann through the $2 billion judgment they obtained in Nevada. But that's not what they have here. They don't have that link. They only have a very speculative idea that perhaps Nann has 1HQ3, and that's just not enough under this court's standard for summary judgment. In addition, this court— Can I ask you a question? Of course. One of the arguments you make is we could affirm on the timeliness question, but how can we do that if the district court didn't analyze that issue or rely on that issue in making its own ruling? I think that it's probably not as strong of a basis as the other bases, but it is supported in the record. This court can affirm on any basis in the record. Here it was clear from the order. The order specifically said that it was—I think it was untimely, it was late, and didn't excuse that untimeliness explicitly. And so if you analyze the factors for when that might be a proper exercise of the court's discretion to excuse that untimeliness, I think it's pretty clear that Battle Born fails. Battle Born knew about the proper— But why should we do that in the first instance if the district court didn't? You may use that as a basis for affirming. We wanted to preserve the argument, but we think that a stronger basis would be simply to affirm on the basis that the pleading was insufficient and that there was not evidence of standing. Do you think if the district court had said, I am excusing the untimely filing, do you think that would have been an abuse of discretion? I would have disagreed with it, Your Honor. I'm not sure it would amount to an abuse of discretion. And, of course, it would depend on what the basis was for the analysis of that. Because if you can't say that it would necessarily have been an abuse of discretion for the court to say that, then given that the court didn't say anything one way or the other, I'm not sure how we could affirm on that basis for the reason that Judge Coe suggested. Right. I think that's right. The other basis for summary judgment that would be appropriate would be to look at whether a reasonable fact finder could find that he was an innocent owner. Not he. That is that Battleborn was an innocent owner. And here we, again, believe that there is no evidence that supports that he could show that because at most Battleborn was a judgment creditor. Excuse me. That, again, was a judgment debtor to Battleborn. And so even if he did own the 1HQ3, it wouldn't entitle Battleborn as the judgment creditor in the bankruptcy proceedings to the specific asset because they're a general creditor. And so because of that, we believe that that's an alternate basis on which this court can affirm the striking of their claim. What do you make of the 54 deleted files on Mr. Nann's computer? I mean, they paint this picture that seems kind of suggestive. There are these 54 transactions, and it all seems like it matches up. What's the government's view of that? I think it's not enough. It's not enough to say that there's a coincidence. I mean, I think I deleted 54 e-mails from my Outlook account yesterday, but I wouldn't say that that is evidence that I own the 54 accounts because there's a deletion that matches up, that that means that that's evidence. There might have to be something more, and I think it's striking that none of the declarations said very specifically what those 54 files that were deleted were. They didn't say that they were Bitcoin addresses or Bitcoin wallets or do any of the tracing. And I think it's striking, too, which is that Bitcoin specifically, you know, there's a public ledger. Unlike some other assets, you can actually track it on the blockchain. And they have, you know, Battleborn seems very well resourced. They've spent a lot of resources trying to track down any assets that Naghan might have had, and they were never able to provide a declaration that showed anything that would trace Naghan and Bitcoins from HQ3 back to Naghan or back to anybody associated with Naghan. And so this, I think, is a manifest failure of evidence. And, you know, for example, their request for discovery, I think, just goes to that, which is that they've had a lot of opportunities to look for evidence, and they can't come up with anything, and they're just seeking sort of a fishing expedition. It's like trying to get an opportunity to buy a lot of lottery tickets because if they hit it big, it would be very big. And so that's not enough, I think, to substantiate a claim in this case, and, you know, especially an untimely claim. Can we go back to your innocent owner argument? Aren't you sort of in the same situation as the timeliness one? The district court didn't address it, so you'd be asking us to do it in the first instance. Isn't that not ideal? It's not ideal, Your Honor. Of course it's not ideal, but it is, I think, supported by the record. And here it would be a de novo standard as opposed to an abusive discretion standard. And so I think that does differentiate that from the timeliness argument. And this is on evidence that's really undisputed, which is it's supported by many of the documents that are provided by Battle Born themselves about the bankruptcy proceedings. I mean, there are hundreds of pages of this which show that the bankruptcy proceedings where they tried to get Naghan to be forthright about his assets, they have been chasing him down and tried to get him to sort of turn over the one HQ3 that they believed he might have. But there's nothing in any of those, nothing in that evidence that shows that they had a specific claim to a specific asset. They don't have that, and because they don't have that, they're just general creditors. And this court has been clear that under bankruptcy law, as general creditors, they don't have a specific claim to any specific asset. So even if, and this is an even if because there's no evidence that Naghan actually has any ownership interest in one HQ3. If Naghan actually did, Battle Born wouldn't. For these reasons, we ask this court to affirm. Thank you. Thank you. Ms. Peterson. Thank you, Your Honor. I just would like to start by addressing the innocent ownership issue. I believe the argument has morphed a little bit on the government side, and now Ms. Chan is arguing that the judgment creditor issue goes to the innocent ownership issue, but that's not what she argued in her brief. The judgment creditor issue is only an issue for First 100 and First 100 LLC. Battle Born Investment Company's claim is not premised at all on being a judgment creditor of NANG. So to the extent they're now relying on the judgment creditor issue to say we can't prove innocent ownership, that doesn't work as to Battle Born Investment Company LLC. I agree that First 100, as an unsecured creditor, doesn't have standing to challenge the civil forfeiture. We think that the allegation is adequately fled as to even those two claimants, but we agree with the government that there's likely to be some problem, as this case proceeds to the merits, for those two claimants only.  Well, legally they don't have standing, right, as unsecured creditors to challenge. I don't think it's an issue to be resolved on the pleadings, Your Honor, given the unequivocal assertion of ownership, but we won't belabor the point, Your Honor, because it's not important because the primary claim here is the one point. I'm just asking you a legal question. General unsecured creditors don't have standing to challenge civil forfeiture, right? They don't have sufficient interest in the property under this court's precedent. Yes, Your Honor. And that would apply to First 100, correct? Correct, Your Honor. I just want to take the court back to the summary judgment issues. It's a very low standard. This court and the other circuits have said it's a very low standard, only intended to weed out frivolous claims, and that standard is certainly met by the evidence we've been discussing already, the 54 files. Thank you, Your Honor, for raising that. The evidence is those were deleted by Sam Oliver, who is named in the Bitcoin transactional documents that are attached to the Lee declaration. Of course, we don't know what the deleted files were because they were deleted, so we couldn't. The government counsel faulted us for not saying what the deleted files were, but we know they were deleted after the writ of assistance issued from the bankruptcy court, and they were deleted just before we obtained control of the devices, and they were deleted by Sam Oliver, who is named in those transactional documents. But, I mean, that is unfortunate that they were deleted, and so you don't know what they say, but you still don't know what they were, right? And so although it adds to the sort of air of mystery and intrigue that surrounds this whole enterprise, it doesn't actually help you establish ownership, does it? It certainly helps us on the 56D analysis, Your Honor. I mean, there's an avenue of discovery, many avenues of discovery, that we should have been allowed to explore here on the standing issue, and the district court didn't permit it, and that's an obvious one. We could have deposed Sam Oliver and asked him what were the files he deleted. So this is a major problem with the summary. But would it go to ownership? What would the 54 files go to? Well, we don't know what it would go to because that's the nature of discovery. We don't know. Right, but under 56D, you have to say, you know, you need this discovery to oppose summary judgment, and because it would provide justification for your opposition on what? Right. I mean, you do have to identify that for 56D. And we did in the Morgan Declaration identify the fact that is that issue, which is whether Mr. Nang owned the bitcoin in 1HQ3 at the time that we acquired all assets of his estate. So it would go to ownership then? Yes, Your Honor. Okay.  I have one question. Yes, Your Honor. If you had evidence that Mr. Nang had told his next-door neighbor that he owned this wallet, would that have been sufficient to establish ownership? I think it depends on the circumstances under which the representation was made. We don't agree with the government's argument that a bare assertion is never sufficient. The government takes that statement out of context. The cases say that the claimant's bare assertion is no longer sufficient at summary judgment, but what we have here is the claimant's assertion that they own the property and the prior owner's assertion under credible circumstances that he owned the property. Thank you. Thank you, Your Honor. Thank both counsel for their arguments, and the case is submitted.
judges: MILLER, KOH, Lynn